## *In re* ADAIR

Docket No. 125389. Submitted March 19, 1991, at Detroit. Decided
    June 27, 1991; approved for publication November 14, 1991, at
    9:10 A.M.

The Department of Social Services petitioned the Wayne County
    Probate Court, Juvenile Division, seeking temporary custody of
    the three minor children of Kathy Adair and Roger Adair, Sr.,
    on the basis of neglect. Following several hearings at which
    Kathy Adair was represented by an attorney who stated that
    he had not been able to determine her whereabouts but be-
    lieved that she was incarcerated out of the state, the court,
    Francis Pitts, J., allowed substituted service with regard to
    Kathy Adair by publication within the county. Following fur-
    ther hearings, the court, Charles W. McDonald, J., entered an
    order making the children temporary wards of the court.
    Subsequently, the court, Frederick E. Byrd, J., entered an order
    placing the children in foster care under the supervision of the
    DSS. Kathy Adair appealed, alleging that the court lacked
    jurisdiction to enter its orders because she was not properly
    served with process.

The Court of Appeals *held:*

1. The court lacked jurisdiction with regard to Kathy Adair
    because it did not determine that reasonable efforts had been
    made to locate her before deciding to allow substituted service
    by publication.

2. The burden of providing that service of process is accom-
    plished in accordance with the court rules is on the DSS, the
    petitioning party.

Reversed and remanded.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE
    — PROBATE COURTS — JURISDICTION.
    A failure to provide statutorily required notice of a hearing by

REFERENCES

Am Jur 2d, Infants §§ 16, 28; Juvenile Courts and Delinquent and
    Dependent Children § 30; Parent and Child § 34.
See the Index to Annotations under Due Process; Notice and
    Knowledge; Social Services; Termination of Parental Rights.

personal service on a noncustodial parent in a termination proceeding is a jurisdictional defect that renders all proceedings in the probate court void; alternative methods of service of process are available, but only after the court determines that personal service is impracticable (MCR 5.920; MCL 712A.12, 712A.13; MSA 27.3178[598.12], 27.3178[598.13]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NOTICE — DEPARTMENT OF SOCIAL SERVICES.

The Department of Social Services, as the petitioning party in a child protective proceeding, is charged with establishing that service of process was accomplished in accordance with the court rules.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Howard B. Grodman,* Assistant Attorney General, for the Department of Social Services.

*Richard R. Harris,* for the minor children.

*Jerome E. Crawford,* for Kathy Adair.

Before: HOLBROOK, JR., P.J., and CAVANAGH and FITZGERALD, JJ.

PER CURIAM. Kathy Adair (hereafter respondent) appeals by leave granted an order of the Wayne County Probate Court, Juvenile Division, placing her three minor children in foster care under the supervision of the Department of Social Services. She challenges the lower court's jurisdiction to order temporary custody on the basis that she was not properly served with process. We reverse.

A petition, alleging neglect of the minor children, was filed on November 17, 1988, when one of the children told the Hamtramck Police Department that she had been sexually abused by her father, with the last incident being on October 5, 1988. The DSS sought temporary custody of all three children.

At a pretrial hearing on December 8, 1988, an attorney appeared on behalf of respondent, who was not present. A DSS worker informed the hearing referee that she believed the respondent was incarcerated somewhere in Virginia. The referee commented that the court would have to make sure legal notice was provided to respondent before proceeding further.

At the next hearing, on January 20, 1989, in response to questioning from the court about respondent's absence, her attorney indicated that he had not been able to ascertain her whereabouts but believed she was incarcerated in Virginia. The court suggested that service be attempted through the prison system. At a February 2, 1989, hearing, respondent's attorney again indicated that his client was unavailable to him.

An adjudicative hearing was held on February 23, 1989, and again respondent was not present. Respondent's counsel again appeared and questioned witnesses. During his closing arguments, the attorney for the minor children asked the court to assume jurisdiction of the children on the basis that respondent did not present a plan for the children and had been neglectful. The court indicated that "due process has been satisfied" and took the matter under advisement. Five days later, the court issued a written opinion finding the allegations in the petition to have been proven by a preponderance of the evidence and making the children temporary wards of the court.

Another hearing was held on May 4, 1989, during which it became clear that the trial court had not made any disposition regarding the children, which the court rules provide must occur within thirty-five days after the court assumes jurisdiction of a child. MCR 5.973(A)(2). In arguing that the children had to be returned to their home

because a timely disposition had not been made, the attorney for the respondent father stated that only the father's rights were at issue because the respondent mother was incarcerated, her exact whereabouts being unknown. An attorney appearing on behalf of the respondent mother indicated that his client was incarcerated in West Virginia, but made no comment regarding the motion. A May 9, 1989, disposition date was set.

After the dispositional hearing, the court agreed with a DSS report recommending foster care placement and issued an order to that effect. Respondent mother appeals from this order.

Respondent's sole issue on appeal is whether the decision of the lower court is erroneous because it failed to obtain jurisdiction of her.

MCR 5.920(B)(2)(c) provides that a summons must be used to notify a parent, or person with whom the child resides, of a hearing on a petition seeking termination of parental rights in child protective hearings. Where the person to be summoned is not the respondent, alternative methods of service, as provided in MCR 5.920(B)(4), can be used to notify the respondent. In this case, because the petition named both the respondent mother and the respondent father, both were entitled to personal service or, alternatively, one of the methods provided in MCR 5.920(B)(4)(b) and (c). From the limited file available to us, it appears that both of these methods were used. However, nothing in the lower court record indicates that, before allowing notice by publication, the court found that the respondent's whereabouts could not be determined after reasonable efforts were made to locate her.

A failure to provide notice of hearing by personal service on a noncustodial parent in a termination proceeding as required by statute, MCL 712A.12; MSA 27.3178(598.12), is a jurisdictional

defect that renders all proceedings in the probate court void. *In re Brown,* 149 Mich App 529, 534-542; 386 NW2d 577 (1986). Although the *Brown* Court noted that a failure to follow the court rules regarding notice requirements would not establish a jurisdictional defect, the Court held that the failure to provide notice required by the applicable statute was a jurisdictional defect. *Id.,* pp 540-542. Although MCR 5.920 did not exist in its present form at the time *Brown* was decided, it generally provides the same requirements for the service of summons as § 12. Moreover, MCL 712A.13; MSA 27.3178(598.13) provides for service of process by alternative methods, including publication, to confer jurisdiction on the probate court.

While MCL 712A.13; MSA 27.3178(598.13) allows for alternative methods of service of process, it still requires that the trial court first determine that personal service is impracticable. Because the respondent was apparently out of the state, it would appear that personal service would be impracticable. The parties refer to the fact that notice was accomplished by publication. We believe it was error for the trial court to allow only for notice by publication without first further inquiring regarding the whereabouts of respondent and attempting to determine if reasonable efforts were made to locate her by the DSS for service by certified or registered mail. Under the facts of this case, it would have been reasonable to contact the family or to make some type of inquiry to the correctional systems of West Virginia and Virginia by telephone call or letter in an effort to find respondent before resorting to substituted service, particularly publication in Wayne County alone when it was known respondent was out of the state.

Although the court rules do not indicate what party has the burden in attempting to locate a

parent, we do not believe the responsibility should be any different than that provided in civil matters. The DSS, as the petitioning party, is charged with providing that service of process is accomplished in accordance with the court rules. While others may be required to assist in locating a respondent if they possess special information, the burden should not fall solely on court-appointed counsel, as apparently happened in this case. The DSS had a past involvement with respondent and consequently should have been able to locate someone who knew where she was being held.

Although respondent never appeared in this matter before disposition, the limited record made indicates that she may have never received any kind of notice that proceedings were commenced. It is clear that the trial court's order of disposition, placing the children in foster care with the DSS to supervise, was an order entered against respondent. Although it may be that respondent is currently incarcerated in a prison outside the state, it is nonetheless possible that she could plan for the children, for instance, by having one of her relatives care for the children until she is released. At no point in these proceedings was there any reference to respondent's family being a possible relative placement in lieu of foster care.

Because the trial court did not determine that reasonable efforts had been made to locate respondent before it decided to grant substituted service by publication, the probate court proceeded without jurisdiction with regard to respondent. We therefore reverse and remand for additional proceedings, including a hearing regarding the attempts made by the DSS to learn of respondent's whereabouts.

Reversed and remanded. We do not retain jurisdiction.