*In re* PAULSON.

KARRIB *v.* BAILEY.

1. JUVENILE COURTS—JURISDICTION — PROCESS — PARENTS — NOTICE —STATUTES.

In delinquency proceedings before the juvenile court against a girl of the age of 14 years and 9 months, failure to serve a summons upon the superintendent or matron of the Kent county juvenile home, in whose custody the child was, to appear with the child, and also failure to give notice of the hearing to the parents of the child, as required by 1 Comp. Laws 1915, § 2015, was fatal to the jurisdiction of the court.

2. SAME—NOTICE—PARENTS—WAIVER.

The purpose of said summons and notice being to advise the child, as well as the parents or other person having her custody, as to the charge, and to give a reasonable time to prepare for the hearing, any attempt by the parents or others to waive same would be of no avail.

3. SAME—WAIVER OF NOTICE—EFFECT.

The mother of the child, having had no legal notice of the hearing, was not bound thereby, since her attempt to waive said notice was without effect.

4. SAME—NOTICE—COUNTY AGENT.

It was also the duty of the court to notify the county agent to be present at the hearing, as required by the law, which appears by the record to have been omitted.

Habeas corpus proceedings by Matilda Paulson Karrib against Hazel D. Bailey, superintendent of the Industrial Home for Girls, to obtain the custody of Inez Paulson and certiorari to review such proceedings before Clark E. Higbee, judge of the juvenile division of the probate court of Kent county. Submitted October 20, 1920. (Calendar No. 29,409.) Proceedings vacated December 21, 1920.

*Shelby B. Schurtz,* for plaintiff.

*Alex. J. Groesbeck,* Attorney General, and *Clare Retan,* Assistant Attorney General, for defendants.

BIRD, J. Matilda Paulson Karrib is plaintiff in habeas corpus proceedings to secure the release of her daughter, Inez Paulson, from the Industrial Home for Girls, where she was committed on a charge of delinquency, on September 16th of the present year, by the juvenile court of Kent county. The question is raised by plaintiff that the juvenile court was without jurisdiction to make the order of commitment by which Inez is now deprived of her liberty. The point most relied upon by plaintiff is the failure of the juvenile court to issue the summons and notice provided for

in the statute, and its failure to cause proper service thereof. The material part of the statute prescribing the practice is as follows:

"Upon the filing with the court of a sworn petition setting forth upon knowledge or upon information and belief, the facts showing that any child resident in said county is a delinquent, dependent or neglected child within the meaning of section one of this act, the court shall, before any further proceeding is had in the matter, give notice thereof to said county agent or to a duly appointed probation officer, who shall have opportunity allowed him to investigate the facts and circumstances surrounding the case, and upon receiving such notice the said officer shall immediately proceed to inquire into and make a full examination of the parentage and surroundings of the child and all the facts and circumstances of the case, and report the same to the said court in writing. If, after a full investigation, it shall appear to the court that public interest and the interest of the child will be best subserved thereby, a summons shall issue reciting the substance of the petition and requiring the person having the custody or control of the child, or with whom the child may be, to appear with the child at a place and time which shall be stated in the summons, and if such person is other than the parent or guardian of such child, then said parent or guardian shall be notified of the pendency of the case. The court shall notify the county agent or probation officer making the preliminary investigation to attend said trial and act as custodian of said child." * * * 1 Comp. Laws 1915, § 2015.

The record discloses that the delinquency of Inez was called to the attention of the juvenile court on September 14th by Katherine Gillette, a police woman of the city of Grand Rapids, by a petition charging Inez with being a delinquent child. This was followed by a notice to the county agent to investigate the charge. He did so and later filed his report in writing with the court. It is shown by this report that Inez Paulson was of the age of 14 years and 9 months,

and that she was a resident of Grand Rapids, living with and under the custody and control of her parents. The report gives the residence of the parents as 1021 South Ionia street and 108 Sheldon street, in the city of Grand Rapids. Following the report of the county agent Inez was, by an order of court, committed to the Kent county juvenile home to await the disposition of her case. A hearing was had on September 16th at which testimony was taken and an order made committing her to the Industrial Home for Girls until she reached the age of 21 years, which order was executed on the following day. The proceedings do not show that any summons was issued and served upon the matron or superintendent of the Kent county juvenile home, nor upon the parents of Inez. Neither do they show any legal notice of the hearing on the parents. To excuse the failure to serve the statutory notice on the parents the following waiver is relied upon:

"We, the parents of Inez Paulson, upon whom a petition was filed in juvenile court this morning alleging that she was a delinquent child by reason of her immoral conduct and her associations with immoral persons, hereby waive notice of hearing and consent that said child be disposed of as the probate judge of this county may deem for her best interest and the best interests of the community, without further notice upon us, or either of us.

"MATILDA PAULSON,
"ADOLPH PAULSON.

"Signed,
"September 16, 1920.
"In the presence of
"J. E. HYDE and PAUL NELSON."

The return shows that on September 17th plaintiff filed an affidavit revoking her waiver of notice, at the same time explaining that she did not realize or understand the effect of it when she signed it. The return also shows that Shelby B. Schurtz appeared specially as counsel for Inez and the mother, and demanded a

jury to pass upon the question of delinquency, and also demanded that bail be fixed for her release. It appears, however, that at the hour of filing these papers, on September 17th, Inez was on her way to the Industrial Home at Adrian.

, Section 2015 in plain terms requires a summons to be issued, setting up the substance of the charge and the time and place of hearing. If the parents have the custody of the child the summons must be served on them. If the child is in the custody of another, then notice must be served on the parents. Both of these statutory requirements are jurisdictional, but neither of them appears from the record to have been complied with. The suggestion is made that it is of no importance that the summons was not issued because the girl was present at the hearing. If the only purpose of the summons was to require the attendance of the girl this suggestion might have force, but we think the summons was intended by the legislature to serve another purpose, namely, to notify the parent or person having the custody of the girl, and also the girl herself, of the charge made against her. We conclude this from the fact that the substance of the charge is required to be set up in the summons. Not only the girl, but the parent or other person having her in charge, was entitled to be advised of the charge and was entitled to have a reasonable time, before the hearing, in which to advise with counsel and prepare for a defense if she desired to make one, and no attempt by parent or other person having her in custody to waive this right for the girl would be of any avail. 14 R. C. L. p. 284.

Inez being in the custody of the Kent county juvenile home, the summons should have been served on the superintendent or matron of the home, and a written notice containing the same information as the summons, namely, the substance of the charge and time

when and the place where the hearing would be held. While the substance of the charge was recited in the so-called waiver, which is sought to be substituted for the notice, it contained no hint or information when the hearing would be held, or where it would be held. Had a notice containing this information been served, as the statute commands, the mother would have had opportunity to consider the matter, to consult counsel and prepare a defense for the girl, if she were not agreeable to the proceedings. We must conclude that the mother had no legal notice of the proceedings and, therefore, was not bound by them. *Goodchild* v. *Foster*, 51 Mich. 599.

Another omission of the court is called to our attention, which, while it may not be a jurisdictional omission, is one which should not be passed over without comment. The proceedings do not disclose that the county agent was notified by the court to be present at the hearing, as the law requires, nor does it appear that he was present. The failure to observe the law in this and other respects resulted in the girl being present at the hearing where she was obliged to answer to a serious charge without parent, counsel or county agent to look after her interests. This situation emphasizes the importance of having the summons and notice issued and served as the law requires.

The failure to issue and serve the summons as the statute requires, and the failure to serve such a notice upon the parents as the law requires, we must hold were fatal to the jurisdiction of the court. The order of commitment will be vacated. Inez will be released from the Industrial Home for Girls and conducted back to her home in charge of some suitable person appointed by the juvenile court of the county of Kent.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.